# Hooks *v.* The State.

*Indictment for Murder.*

1. *Charge as to sufficiency of evidence.*—To authorize a conviction in a criminal case, the evidence must convince the jury *beyond a reasonable doubt*; and a charge which instructs them that they can not acquit the defendant, "if they *believe the evidence,*" is reversible error.

2. *Homicide by husband; adultery of wife as provocation.*—If the husband detects his wife in the act of adultery, and immediately slays her or her paramour, the law does not entirely justify or excuse him, but holds the provocation sufficient, as matter of law, to reduce the killing to manslaughter; and if he detects them, not in the act of adultery, but in a compromising position under suspicious circumstances, and kills one or both of them, it is a question for the jury whether the provocation was sufficient to reduce the grade of the offense, and whether he acted under the heat of sudden passion thereby excited, as in other cases of homicide under the heat of passion excited by great provocation.

From the Circuit Court of Elmore.

Tried before the Hon. N. D. Denson.

The defendant in this case, Thornton Hooks, a freedman, was indicted for the murder of Willis Thorman, another freedman, by shooting him with a gun, or, as alleged in the the second count, by cutting him with a razor; was convicted of murder in the second degree, and sentenced to the penitentiary for the term of twelve years. The difficulty between the parties, as the evidence adduced on the trial showed, commenced at the defendant's house, or in his yard, early one morning in August, 1892, the deceased being badly cut with a razor, and the defendant receiving serious injuries; and the deceased having then left the premises, and walked off some 250 yards, the defendant followed him, and shot him while leaning against a stump, exhausted from loss of blood. The deceased died, from the effects of the wounds, on the afternoon of the same day. His statements, which were admitted in evidence as dying declarations, were to the effect, "that the defendant cut and shot him for nothing;" that he stopped at defendant's house to deliver a message to his wife, and only interfered to prevent him from beating her. The defendant testified in his own behalf, that after leaving home that morning, and looking back, he saw the deceased stop at the house, and go in with his wife; that he at once returned, and, looking through the window of the room, saw

them behind the door attempting to commit an act of adultery. On this evidence, the court charged the jury, "If the jury believe all the evidence, they can not acquit the defendant." The defendant excepted to this charge, and also to the refusal of each of the following charges, which were asked by him in writing: (1.) "If the jury believe from the evidence that the defendant saw his wife and the deceased in such position one to the other as to lead a reasonably prudent man to believe that they were about to commit the act of adultery, and thereupon entered into a combat with the deceased, and before a sufficient time had elapsed for his passion, aroused by such provocation, had time to cool [?] he killed the deceased; then the law tenderly regards a homicide thus committed, and makes it only manslaughter." (2.) "If the jury find from the evidence that the conduct of the deceased, at the time the defendant entered into combat with him, was such as would provoke the defendant; then, in estimating the degree of provocation, the jury may look to the fact, if they find from the evidence that it is a fact, that the combat was had at the defendant's house." (3.) "If the jury believe from the evidence that the defendant entered into combat with the deceased to prevent him from committing adultery with his wife, and that when he inflicted the wound which produced the death, the provocation was so recent and so strong that he could not be considered the master of his own understanding,—then the defendant would be guiltless."

WM. L. MARTIN, Attorney-General, for the State, cited 1 Wharton's Amer. Crim. Law, § 459; 9 Am. & Eng. Encyc. Law, 585, note 1.

COLEMAN, J.—The defendant was convicted of murder in the second degree. The exceptions reserved arise from a charge given at the request of the prosecution, and the refusal to charge as requested by the defendant. The charge given for the prosecution was as follows : "If the jury believe all the evidence, they can not acquit the defendant." This charge instructs the jury, in effect, that if they believe the evidence, the defendant must be convicted of some offense. The defendant reserved an exception to the giving of this charge. The jury are not required, under this charge, to believe the evidence beyond a reasonable doubt. It is made sufficient for conviction, if they only believe the evidence. Prosecuting attorneys should be careful, in the preparation of charges, that plain principles of law are not violated ; and

[Hooks v. The State.]

the courts should closely scan the phraseology of charges requested. That the proof must satisfy the jury of the defendant's guilt beyond a reasonable doubt, before they are authorized to convict, is an "ancient landmark," and one which should be preserved and always recognized.— *Green v. State*, 97 Ala. 59; *Pierson v. State, ante* p. 148.

Where one person detects another in the act of adultery with his wife, and immediately slays the adulterer or his wife, as matter of law the provocation is sufficient to reduce the killing to manslaughter. The law does not declare that any thing less than actual sexual intercourse is a sufficient provocation, as a matter of law, to reduce the offense from murder to manslaughter. It may be that the detection of another, under circumstances such as testified to by the plaintiff, may provoke and engender passion to such a degree as to overthrow reason, and if, under the influence of passion thus aroused, he immediately attack the offending party and slay him, before cooling-time has intervened, not from malice or unlawful formed design, but from such passion thus provoked, the offense may be manslaughter. Whether the party acted under the influence of such a passion, and whether the provocation was sufficient, and whether there had been "cooling-time," are questions of fact to be determined by the jury. The principle we announce is, that the law does not declare the provocation sufficient, unless the parties are detected in the act; but a jury may say whether the compromising position of the parties was sufficient to arouse passion in the husband to such a degree as to overthrow reason, just as a jury may say in some other cases whether the offense was the result of sudden and sufficient provocation to reduce the offense from murder to manslaughter. Charge one, requested by the defendant and refused, was faulty, in that it assumed, as matter of law, that the provocation was sufficient. It should have been left to the jury to say, from the evidence, whether the provocation was sufficient, and whether he acted under the influence of sudden heat of passion, thus engendered, and before cooling-time took the life of the deceased.

There was no error in refusing the 2d and 3d charges requested by the defendant. There is no law, unless made so by statute, which wholly excuses the husband from liability for taking the life of the wife or her paramour, although he slay them or either while in the act of adultery. The 3d charge asserts a contrary principle. The 2d charge is argumentative, confused and misleading, and was properly refused.

Reversed and remanded.