The appellant, Larry Wayne Speake, was convicted of the murder of his wife and was sentenced to 30 years' imprisonment. On this appeal from that conviction, he argues that the trial court committed reversible error in refusing to charge the jury on the criminal offense of manslaughter as a lesser included offense of murder.
The appellant contends that a charge of manslaughter was required because there was evidence that he did not intend to kill his wife. He asserts that his lack of intent was established by evidence that he was provoked and by evidence of his diseased mental condition.
 I.
The appellant asserts that evidence of provocation is found in his confession, the significant portion of which states:
 "On Thursday, December 13, 1990, my wife and I went to bed about 10:00 p.m. and watched the news. After the news was over, I wanted to make love to Charlotte. Charlotte did not want to make love and she brought up the ring she had been wanting to buy. We got into a fuss about the ring. Charlotte got out of bed and put her clothes on. She put on a black sweater with a print on the front and black pants. Charlotte told me she was going to leave me alone, and said she was going to find someone else to have sex with. Then Charlotte went into the kitchen and I got out of bed and followed her. In the kitchen, Charlotte got her purse and car keys and went outside onto the back porch. I followed her. I was telling her not to go. At this point, Charlotte said some very hurting stuff to me and I lost my temper. I choked her with a belt type rope. When I realized what I had done, I panicked. I couldn't believe what I had done. It shouldn't have happened. I cried and begged Charlotte to forgive me. After this, I put Charlotte's body into the back of my pickup truck and took her clothes off." C.R. 369-70; R. 186.
The statement continues as the appellant relates how he disposed of his wife's body in Sandy Creek to conceal his involvement in her death.
The evidence is overwhelming and virtually undisputed that the appellant, however provoked or impassioned he claims to have been, intentionally strangled his wife to death.
Fundamentally, the question in this case is whether the provocation was sufficient and the appellant's "fit of temper" and passion was justified in any degree. Legally, the issue is whether a wife's admission that she is going "to find someone else to have sex with" constitutes legal provocation so as to reduce the commission of an intentional killing from murder to manslaughter. *Page 1240 
We hold that, as a matter of law, the comments in this case do not constitute sufficient provocation.
The crime of manslaughter is defined in Ala. Code 1975, §13A-6-3:
"A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person, or
 "(2) He causes the death of another person under circumstances that would constitute murder under section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
In this case there is no ground for an instruction on reckless manslaughter. The deceased was strangled to death with a belt or rope. There was expert medical testimony that "the ligature was held very firmly, it was held very steadily for a long period of time to accomplish this strangulation. * * * [For] [s]everal minutes and possibly as many as five." R. 251, 260. Here, there is simply no evidence of reckless conduct.
Furthermore, there is no evidence of legal provocation. "The law does not accord impunity to unbridled passions, nor suffer an individual to dispose of the life of his fellow being on his own judgment and belief." Flanagan v. State, 46 Ala. 703, 707
(1871), overruled on other grounds, Rogers v. State, 117 Ala. 9,22 So. 666 (1898). "The well established rule in Alabama is that mere words, no matter how insulting or abusive, cannot reduce a killing to manslaughter. Watson v. State, 82 Ala. 10,2 So. 455 (1886)." Biggs v. State, 441 So.2d 989, 992
(Ala.Cr.App. 1983).
 "It is laid down by the most approved authors on criminal law, that 'words of reproach, how grievous soever, are not a provocation sufficient to free the party killing from the charge of murder, and neither are provoking actions and questions, without an assault.' — Roscoe's Cr. Ev., 683, marg.; Fost. 290; 1 Hawk.Pl. Cr. chap. 31, § 33; 1 Hale, 455. Mr. Russell says, 'no affront by bare words or gestures, however false and malicious, and aggravated with the most provoking circumstances, will free the party killing from the guilt of murder.' — 1 Russ. 434-5; Whart.Crim.Law, 234, and cases cited in note y.; see also, Archb.Cr.Pl. 417, marg. page."
Felix v. State, 18 Ala. 720, 723 (1851).
In Alabama, it is well settled that witnessing the act of adultery is recognized as legal provocation for the intentional homicide of either the unfaithful spouse or the paramour.Palmore v. State, 283 Ala. 501, 508, 218 So.2d 830, 836 (1969). However, it is also settled that mere admissions of infidelity do not constitute legal provocation. Biggs v. State,441 So.2d 989, 992 (Ala.Cr.App. 1983), and cases cited therein. See alsoPurser v. State, 607 So.2d 298 (Ala.Cr.App. 1991); Harrison v.State, 580 So.2d 73, 74 (Ala.Cr.App. 1991); White v. State,587 So.2d 1218, 1230 (Ala.Cr.App. 1990), affirmed, 587 So.2d 1236
(Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 979,117 L.Ed.2d 142 (1992).
In Brunson v. State, 212 Ala. 571, 103 So. 664 (1925), the defendant shot the deceased after accusing the deceased of having "just lain" with his (the defendant's) wife. The defendant requested the following jury charge:
 "If the jury believes from the evidence that immediately before the killing the defendant's wife and the deceased engaged in the act of sexual intercourse, and the circumstances then and there coming to the knowledge of the defendant apprised him of the fact, if it be a fact, then there was in the eyes of the law adequate provocation such as would reduce the crime to manslaughter, if the defendant acted in the heat of passion thereby aroused, and killed the deceased while under the influence of such passion."
Brunson, 212 Ala. at 571, 103 So. at 665, 664. The Alabama Supreme Court held that the refusal of this requested charge was proper on the ground that " '[t]he law *Page 1241 
does not declare that any thing less than actual sexual intercourse is a sufficient provocation, as a matter of law, to reduce the offense from murder to manslaughter.' "Brunson, 212 Ala. at 572, 103 So. at 665, quoting Hooks v.State, 99 Ala. 166, 168, 13 So. 767, 768 (1893).
We note that "[t]he modern tendency is to extend the rule of mitigation beyond the narrow situation where one spouse actually catches the other in the act of committing adultery." 2 W. LaFave and A. Scott, Substantive Criminal Law § 7.10(b)(5) (1986).
 "The formerly well-established rule that words alone (or words plus gestures) will never do for reducing an intentional killing to voluntary manslaughter has in many jurisdictions changed into a rule that words also will sometimes do, at least if the words are informational (conveying information of a fact which constitutes a reasonable provocation when that fact is observed) rather than merely insulting or abusive words. Thus a sudden confession of adultery by a wife, or information from a third person that a wife has been unfaithful, has sometimes been held to constitute a provocation to the husband of the same sort as if he had made an 'ocular observation' of his wife's adultery."
2 Substantive Criminal Law at § 7.10(b)(6) (footnotes omitted). See also Annot., 93 A.L.R.3d 925 (1979). Despite this "modern tendency," this Court is bound by the decisions of the Alabama Supreme Court. Ala. Code 1975, § 12-3-16. Furthermore, in this case, the wife's "threat" to "find someone else to have sex with" is not an admission of past adultery. Rather, it is a threat of future misconduct that does not even imply the present existence of a specific paramour with whom she intended to commit the act of adultery. Here, the threatened act of adultery was neither so imminent nor so certain that the suggestion of adultery lessened the appellant's culpability for the intentional killing. There was no showing that the killing was necessary to prevent a planned act of adultery. CompareScroggs v. State, 94 Ga. App. 28, 93 S.E.2d 583, 585 (1956).[1]
See Stevens v. State, 458 So.2d 726, 731 (Miss. 1984) ("The evidence at best shows mutual accusations of adultery and an admission on the part of the deceased that she had entertained the thought").
Although there is evidence that the wife also said some "very hurting stuff" to the appellant, there is no evidence of what that "stuff" was. Therefore, that "very hurting stuff" has no legal significance under the traditional rule that mere words, however offensive or insulting, will not reduce a homicide from murder to manslaughter.
For these reasons, we find that the trial court properly refused to charge the jury on "heat of passion" manslaughter as a lesser included offense of murder.
 II.
The appellant was not entitled to a charge on reckless manslaughter on the theory of diminished mental capacity.Barnett v. State, 540 So.2d 810, 812 (Ala.Cr.App. 1988).
In effect, through both arguments presented in Parts I and II, the appellant would have this Court adopt the position reflected in the Model Penal Code, which defines manslaughter as follows:
 "(1) Criminal homicide constitutes manslaughter when:
". . . . *Page 1242 
 "(b) a homicide which would otherwise be murder is committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a person in the actor's situation under the circumstances as he believes them to be."
Model Penal Code § 210.3 (1980).
The Commentary to § 13A-6-3 notes that this proposal was rejected:
 "Under § 13A-6-3(a)(2), it was originally proposed to replace the 'heat of passion' due to provocation criterion with 'extreme mental or emotional disturbance,' if reasonable, and not the result of defendant's own intentional, knowing, reckless or criminally negligent act, which approach is being adopted by many modern criminal codes. . . . This standard originated in the Model Penal Code § 210.3. . . .
 "However, some members of the Advisory Committee considered the proposal unsound, unclear and susceptible of abuse, so it was not adopted, and § 13A-6-3(a)(2) retains the 'heat of passion' under legal provocation defense. What constitutes adequate legal provocation is not defined but remains, as previously, for judicial interpretation."
See also Barnett, 540 So.2d at 812.
The appellant received a fair trial. He has been well represented both at trial and on appeal. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] In that case, the Georgia Appellate Court noted, "[I]n order to justify such a killing it is not necessary that the act [of sexual intercourse] be in progress, or that it is to be committed then and there. It is enough if it be apparent that the killing is necessary to prevent a planned act of sexual intercourse." Scroggs, 93 S.E.2d at 585. Subsequently, the Supreme Court of Georgia rejected the concept that adultery "justifies" an intentional killing: "In this day of no-fault, on-demand divorce when adultery is merely a misdemeanor, and when there is a debate raging in the country about whether capital punishment even for the most heinous crimes is proper, any idea that a spouse is ever justified in taking the life of another — adulterous spouse or illicit lover — to prevent adultery is uncivilized." Burger v. State, 238 Ga. 171,231 S.E.2d 769, 771 (1977) (citations omitted). See also Chancellorv. State, 165 Ga. App. 365, 301 S.E.2d 294, 297 (1983).
In Alabama, adultery is a Class B misdemeanor. Ala. Code 1975, § 13A-13-2(c).